UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEVE RAYMOND MORE,

　　　　　Plaintiff,

　　v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

　　　　　Defendant.

CASE NO. 3:16-cv-05283 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 13, 16, 17).

After considering and reviewing the record, the Court concludes that the ALJ did not commit harmful legal error in the evaluation of plaintiff's Social Security applications. First, the ALJ offered clear and convincing rationale for failing to credit fully plaintiff's testimony. For example, despite plaintiff's testimony that he gets "really bad anxiety" when he is around groups of people, when plaintiff actually attended group

therapy he "presented with smiles and a confident manner," and "appeared to be very attentive throughout the group process," readily asking "questions for clarification" (AR. 55, 397). This example demonstrates that it was appropriate for the ALJ not to credit fully plaintiff's testimony regarding his limitations, as his testimony about his alleged limitations is contradicted by his treatment record.

Similarly, plaintiff testified at his administrative hearing that he "constantly" hears and sees things that are not really there, and that his hallucinations affect his ability to concentrate and interact with other people (AR. 51, 54-55). However, plaintiff reported to an examining psychologist that he has hallucinations only "at night" (AR. 385).

In addition, the ALJ offered specific and legitimate reasons for failing to credit fully the opinion of an examining psychologist, as she specifically indicated that she was relying on plaintiff's self-report when providing her evaluation and that it therefore "is reflective only of the person's self-assessment" (AR. 405). The ALJ also found that the opinion of the examining psychologist is inconsistent with plaintiff's reported abilities, such as providing consistent care for his two young boys, for whom plaintiff has sole responsibility (*see* AR. 45, 419).

Finally, there is no inconsistency between the vocational expert's testimony and the DOT. For example, a limitation on reaching in one direction on one side is not necessarily inconsistent with testimony that a claimant can perform a job that requires frequent reaching when the DOT does not specify that the frequent reaching entails reaching in the prohibited direction.

Therefore, this matter as affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

<u>BACKGROUND</u>

Plaintiff, STEVE RAYMOND MORE, was born in 1973 and was 39 years old on the amended alleged date of disability onset of December 5, 2012 (*see* AR. 11, 40, 163-69, 170-75). Although plaintiff reportedly experienced traumas during his childhood, such as witnessing a murder at the age of five, he appears to have gained a significant ability to deal with his impairments (*see* AR. 332). For example, plaintiff testified that he is the one who cares for his two young boys (AR. 45, 419). One of plaintiff's treatment providers opined that plaintiff was "an excellent father," and noted that plaintiff was very "gentle, very attentive, and very natural" (AR. 421). In mid-2014, plaintiff "describe[d] how he turned his life around [] in order to be a healthy parent to his kids," and reported that he "maintains the household and child care" (AR. 500, 503).

Plaintiff completed the eighth grade and obtained his GED (AR. 42).   Plaintiff has some work history as a sandblaster and construction laborer (AR. 223-34). Plaintiff testified that he does not remember why he left his last job (AR. 64).

According to the ALJ, plaintiff has at least the severe impairments of "schizoaffective disorder; posttraumatic stress disorder (PTSD); polysubstance dependence in remission; borderline personality disorder; obesity; low back abnormality (20 CFR 416.920(c))" (AR. 13).

At the time of the hearing, plaintiff was living with his girlfriend and his two young sons (AR. 44-45).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 76-88, 90-103, 106-09). Plaintiff's requested hearing was held before Administrative Law Judge David Johnson ("the ALJ") on July 9, 2014 (*see* AR. 36-74). On September 9, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 8-29).

In plaintiff's Opening Brief, plaintiff alleges the following:  (1) The ALJ did not provide clear and convincing reasons for failing to credit fully plaintiff's testimony; (2) The ALJ did not provide legitimate reasons for rejecting the opinions of examining psychologist, Dr. Wingate; (3) The jobs that the ALJ found that plaintiff can perform have demands in excess of the limitations he identified in his Residual Functional Capacity Assessment.  The ALJ did not identify or resolve the inconsistencies between the Vocational Expert's testimony and the Dictionary of Occupational Titles; and (4) This case should be remanded for payment of benefits, rather than further administrative proceedings (*see* Dkt. 13, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

**(1)     Whether or not the ALJ provided clear and convincing reasons for failing to credit fully plaintiff's testimony and allegations**.

Although plaintiff contends that the ALJ erred by failing to credit fully plaintiff's testimony and allegations, defendant responds that the ALJ appropriately failed to credit fully plaintiff's testimony, noting, for example, that despite plaintiff's testimony that he gets "really bad anxiety" when he is around groups of people, when plaintiff actually attended group therapy he "presented with smiles and a confident manner," and "appeared to be very attentive throughout the group process," readily asking "questions for clarification" (Dkt. 16, p. 7 (citing AR. 332-33, 396, 397); AR. 55). Defendant's example demonstrates that it was appropriate for the ALJ not to credit fully plaintiff's testimony regarding his limitations, as plaintiff's testimony about his alleged limitations is contradicted by his treatment record.

Plaintiff may not be aware of his own abilities, as on October 31, 2012 he thought that he was "not able to do any group[] [therapy]," but less than six months later, he appeared able to participate in this group therapy session very well (AR. 333). Although defendant is correct that the new Social Security Ruling, SSR 16-3p, did not become effective until March 16, 2016, the Court notes that an ALJ's failure to credit fully a claimant's allegations regarding limitations does not necessarily mean that the individual is not credible. SSR 16-3p, 2016 WL 111-9029, 2016 SSR LEXIS 4 at *1 ("subjective

symptom evaluation is not an examination of an individual's character"). An ALJ can provide clear and convincing rationale for failing to credit fully a claimant's allegations without a finding that such individual is purposely or consciously being misleading. It is not unreasonable for an ALJ to conclude that a claimant is, perhaps unconsciously, underestimating his own abilities, if the record demonstrates as such.

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("There is no conflict in the caselaw, and we reject the government's argument that *Bunnell* excised the "clear and convincing" requirement"); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, *supra*, 947 F.2d at 343, 346-47). As with all of the findings by the ALJ, the specific, clear and convincing reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and analyzing a claimant's testimony regarding limitations lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (citing *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)).

The ALJ failed to credit fully plaintiff's allegations and testimony for numerous reasons (*see* AR. 16-20). For example, the ALJ found that plaintiff's allegations of limitations are inconsistent with plaintiff's treatment record, as discussed already. The ALJ also noted that plaintiff reported doing household chores, cooking meals, and taking care of his two children, suggesting "that plaintiff could perform low stress work on a regular and continuing basis" (AR. 17 (citing AR. 35); *see also* AR. 45, 419).

Most convincingly, as already noted, the ALJ relied on a finding that plaintiff's treatment record contradicted some of his allegations regarding limitations (*see* AR. 18 (citing AR. 397-98)). The ALJ's finding that plaintiff's allegation of disabling anxiety when around groups of people is contradicted by plaintiff's treatment record is a finding based on substantial evidence in the record as a whole. This finding also entails clear and convincing rationale for failing to credit fully plaintiff's allegations of disabling anxiety and his allegations regarding inability to work when in proximity to others. Regarding these allegations, the Court notes that the ALJ, in plaintiff's residual functional capacity ("RFC"), limited plaintiff to work that "does not require interaction with the general public or coworkers" and to work that "is performed where the general public is typically not present" (*see* AR. 15). The ALJ adequately accounted for plaintiff's anxiety around others.

The ALJ also relied on plaintiff's activities of daily living, noting how "treating sources have commented on the claimant's ability to provide care for two young and energetic boys" (*see* AR. 18). The ALJ also noted that plaintiff "reported that he does dishes, cleans the house, prepares dinner, [and] does laundry" (*id*. (citing AR. 407)).

However, the ALJ did not specify how these activities of plaintiff were transferable to a work setting or inconsistent with his allegations, rendering them of questionable utility in the assessment of whether or not to credit fully plaintiff's allegations. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The Court already has noted that plaintiff testified that he "constantly" hears and sees things that are not really there, and that his hallucinations affect his ability to concentrate and interact with other people (AR. 51, 54-55). Plaintiff testified that although he hallucinates constantly, his hallucinations affect his ability to drive "mostly at night" (AR. 44). However, despite repeatedly testifying that he hallucinates constantly, plaintiff appears to have reported to an examining psychologist that his hallucinations only impede his ability to focus "at night" (AR. 385 ("he will drive during the day, but at night he has hallucinations that impede his focus")). As plaintiff's reported to his examining psychologist that his hallucinations impede his focus "at night," but that he was able to drive during the day, the ALJ's failure to credit fully plaintiff's limitations stemming from his hallucinations during the workday, such as the affect on his ability to concentrate, is supported by substantial evidence in the record as a whole (*see id.*). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting *Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Plaintiff testified that the main reasons that he felt that he was unable to work were his hallucinations and inability to concentrate, yet his report to the examining psychologist that he could drive during the

1  day, but not at night because the hallucinations impaired his ability to focus at night

2  supports the ALJ's failure to credit fully plaintiff's alleged limitations with respect to his

3  hallucinations and ability to concentrate during the workday (*see* AR. 63-64, 385). The

4  Court also notes that in February 2012, plaintiff reported that the "more vivid" visible

5  distortion that he experienced when he was changing his medications was "not really a

6  big problem" (AR. 366). This note in plaintiff's treatment record further supports the

7  ALJ's failure to credit fully plaintiff's allegations of limitations stemming from his

8  hallucinations. Although this treatment note was prior to plaintiff's amended alleged

9  onset date, the Court also notes that despite plaintiff's report that he was depressed, he

10  came "across as fairly euthymic, [with] full range of affect" (*id.*). This note from

11  plaintiff's treatment record supports the ALJ's finding that plaintiff's perception of his

12  limitations may have been greater than his actual limitations.

13

14          The ALJ also relied on a finding that plaintiff's "symptoms continued to improve

15  with adjustments to medication  .  .  .  ." (AR. 18). As noted by the ALJ, in February,

16  2014, Dr. Timothy Truschel, M.D. reported that the claimant appeared calmer now with

17  medication and admitted that he was 'a little better'" (*id.* (citing AR. 423)). Also as noted

18  by the ALJ, plaintiff "indicated that he was willing to maintain his current prescription

19  levels because they were working relatively well" (*id.* (citing AR. 424)). The Court notes

20  that at this appointment, plaintiff's concentration and attention were opined to be "quite

21  keen" (*see* AR. 424). Similarly, as noted by the ALJ, in April, 2014, plaintiff "was in a

22  cheerful mood  .  .  .  ." (AR. 18 (citing AR. 479)). All of these findings by the ALJ are

23  supported by substantial evidence in the record as a whole and accurately reflect

24

plaintiff's treatment record. In addition, the Court concludes that the ALJ's inference that plaintiff was not having significant difficulties from his psychological impairments after his medications had been adjusted and after he reengaged in therapy is a finding based on substantial evidence in the record as a whole and supports the ALJ's failure to credit fully plaintiff's allegations of disabling limitations. The fact that plaintiff was willing to maintain his current prescription levels and indicated that they were "working relatively well" supports the ALJ's inference that plaintiff was not having significant difficulties from his psychological impairments at that time that were not controlled with his medication (AR. 424)). *See also Warre ex rel. E.T. IV v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication [and treatment] are not disabling . . . .") (citations omitted).

The ALJ also relied on inconsistencies with respect to plaintiff's reports regarding his substance use and regarding his education (*see* AR. 18-19). Although these inconsistencies do not appear to have much relevance to the ALJ's determination not to credit fully plaintiff's allegations regarding his limitations, plaintiff does not contest the ALJ's finding that plaintiff made inconsistent reports regarding his education and substance use (*see* Dkt. 13, pp. 13-14).

For the reasons stated, and based on the record as a whole, the Court concludes that the ALJ provided clear and convincing rationale supported by substantial evidence in the record for his failure to credit fully plaintiff's testimony and allegations regarding limitations.

(2)    **Whether or not the ALJ provided legitimate reasons for rejecting the opinions of examining psychologist, Dr. TerileeWingate, Ph.D.**

Plaintiff contends that the ALJ erred when failing to credit fully the opinions of examining psychologist, Dr. Wingate. Defendant contends that there is no harmful legal error. Defendant also notes that "many of the limitations and abilities noted by Dr. Wingate -- including those related to cognitive and social factors -- are reflected in the residual functional capacity finding" (Dkt. 16, pp. 12-13 (citing AR. 21)). As noted by defendant, "Dr. Wingate concluded that plaintiff had no significant limitation on his ability to 'understand, remember, and persist in tasks by following very short and simple instructions,' [and] consistent with this conclusion, the ALJ found plaintiff could perform light work that 'consisted of simple, routine tasks, [that did] not require decision-making or goal setting,' and that did not require 'interaction with the general public or coworkers'" (*id.* (citing AR. 15, 386)).

When an opinion from an examining doctor is contradicted by other medical opinions, the examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can

still do despite impairment(s), and your physical or mental restrictions"). Dr. Wingate's opinions were contradicted by the opinions of the State agency medical consultants.

Based on the reasons discussed herein, and based on the record as a whole, the Court concludes that the ALJ offered specific and legitimate reasons for failing to credit fully the opinions of Dr. Wingate. For example, as noted in the Introduction, Dr. Wingate specifically indicated that her "evaluation was based upon client self-report and has not been verified with a third-party, so is reflective only of the person's self-assessment" (AR. 405). Although plaintiff is correct that Dr. Wingate also performed a mental status examination ("MSE"), the ALJ's finding that Dr. Wingate relied heavily on plaintiff's self-report is a finding based on substantial evidence in the record as a whole. It also entails specific and legitimate rationale, and even clear and convincing rationale, for the failure to credit fully her opinions, given the fact that the ALJ offered clear and convincing rationale for failing to credit fully plaintiff's self-assessment regarding his limitations.

The ALJ also found that the opinion of Dr. Wingate is inconsistent with plaintiff's reported abilities, such as providing consistent care for his two young boys, and is inconsistent with plaintiff's demonstrated abilities on MSE, such as having the concentration to "complete digit span of five forward and four backward, remember four out of four objects after five minute interval, and perform serial sevens without difficulty" (AR. 18 (citing AR. 407)). The Court notes that Dr. Wingate's opinion that plaintiff "becomes extremely anxious around the public," is inconsistent with plaintiff's demonstrated affect and demeanor during his group therapy session discussed above, *see*

*supra*, section 1 (AR. 408; *see also* AR. 397). The ALJ's finding that this opinion, as well as her other opinions, is based on plaintiff's self-assessment is a logical inference based on the record, as well as being explicitly indicated by Dr. Wingate herself.

Regarding concentration abilities, Dr. Wingate noted that plaintiff "was able to subtract threes serially from 20 and sevens from 100 without error," and also observed that his "memory was intact" (AR. 407). These results were demonstrated despite plaintiff's report at that time of "continuous auditory hallucinations and occasional visual hallucinations" (*id*.). In addition to supporting the ALJ's failure to credit fully Dr. Wingate's opinions, these MSE results buttress the ALJ's failure to credit plaintiff's testimony regarding the limitations allegedly caused by his hallucinations. The ALJ also found that her opinion is inconsistent with plaintiff's "further improvement with medication  .  .  .  ." which was discussed earlier, *see supra*, section 1 (AR. 21).

Therefore, for the reasons stated and based on the record as a whole, the Court concludes that the ALJ offered specific and legitimate, as well as clear and convincing, rationale supported by substantial evidence in the record as a whole for his failure to credit fully these opinions from Dr. Wingate in her psychological evaluation, which has both a March 26, 2013 date (*see* AR. 405) as well as a March, 2014 date (*see* AR. 409). As Dr. Wingate indicates in this evaluation that she reviewed April, 2013 data (*see* AR. 405), and as the March, 2014 date is from an electronic timestamp (*see* AR. 409), it appears that this evaluation, which is the first evaluation discussed by the ALJ, is from March 2014 (*see* AR. 21).

1    Dr. Wingate also evaluated plaintiff on March 27, 2013 (*see* AR. 384-91). The

2  ALJ indicated that he failed to credit fully this 2013 opinion "for the same reasons listed

3  in evaluating Dr. Wingate's consultative evaluation [from March, 2014]" (*see* AR. 21).

4  Dr. Wingate also conducted an MSE during this evaluation, and noted that his mood "was

5  euthymic," and his "affective range was full and congruent" (AR. 387). She provided

6  numerous opinions regarding his functional limitations (*see* AR. 386).

7    When describing plaintiff's symptoms and how they affect his ability to work, Dr.

8  Wingate indicated that plaintiff "stated that he tends to get distracted and he will have

9  problems completing tasks, [and] he said that he was very hyper as a child and he had

10  problems paying attention in school, [noting], 'I never finish anything'" (AR. 385). Dr.

11  Wingate also noted, when discussing plaintiff's symptoms and how they affect his ability

12  to work, that plaintiff "said that he is anxious, especially in public places  .  .  .  .  and he

13  doesn't like anyone to walk up behind him; [] has nightmares and [] intrusive thoughts of

14  his childhood" (*id.*). These notations in Dr. Wingate's report reflecting plaintiff's self-

15  reports provides some support for the ALJ's inference that this evaluation by Dr.

16  Wingate, too, largely was based on plaintiff's self-report (*see id.; see also* AR. 21). Also

17  supporting this inference is Dr. Wingate's opinion that plaintiff suffered from moderate

18  limitations in his ability to ask simple questions or request assistance, as this opinion is

19  contradicted by plaintiff's demonstrated abilities during group therapy, where he "readily

20  asked questions for clarification" (AR. 397). The Court concludes that the ALJ's

21  inference that this March, 2013 opinion from Dr. Wingate is based on plaintiff's self-

22  report is an inference based on substantial evidence in the record as a whole. The Court

also concludes that this reason entails a specific and legitimate reason for failing to credit

fully Dr. Wingate's March, 2013 opinions.

Based on the record as a whole, and for the reasons stated, the Court concludes

that the ALJ provided specific and legitimate reasons based on substantial evidence in the

record as a whole for failing to credit fully the opinions of examining psychologist, Dr.

Wingate.

> **(3)** **Whether or not the jobs the ALJ found that plaintiff can perform have
> demands in excess of the limitations he identified in his Residual
> Functional Capacity Assessment; and whether or not the ALJ erred by
> not identifying or resolving inconsistencies between the Vocational
> Expert's testimony and the Dictionary of Occupational Titles ("DOT").**

Plaintiff contends that the ALJ erred by failing to resolve inconsistencies between

the testimony from the vocational expert ("VE") and the DOT. Defendant first contends

that plaintiff "waived the opportunity to raise this issue" (Dkt. 16, p. 14 (citing *Meanel v.*

*Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("at least when claimants are represented by

counsel, they must raise all issues and evidence at the administrative hearings in order to

preserve them on appeal"). Plaintiff does not respond to this argument (*see* Dkt. 17, pp.

7-8). However, the Court notes that "the Supreme Court's decision in *Sims* casts

considerable doubt on the continuing validity of the Ninth Circuit's decision in *Meanel*."

*Brewer v. Colvin*, 2016 U.S. Dist. LEXIS 114258 at *12 (C.D. Cal. 2016) (unpublished

decision) (citing *Sims v. Apfel*, 530 U.S. 103, 112, 120 S. Ct. 2080, 147 L.Ed. 2d 80

(2000)). As noted in this decision from the district court in the Central District of

California, "the Supreme Court [has] held that a claimant may raise for the first time

before the court arguments not raised before the Appeals Council." *Id.* (quoting *Sims*, 530

U.S. at 112). The court also noted that "it was the Administration and not plaintiff who had the burden of proof at step five of the evaluation process." *Id.* (citing *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)). This reasoning by the California District Court is persuasive.

Defendant also contends that there is, at most, harmless error.

First, plaintiff argues that his residual functional capacity ("RFC") includes a limitation to light work that does not require lifting more than 10 pounds, but that the Cleaner-Polisher and Router jobs which the ALJ found that plaintiff could perform "both require the ability to lift and carry up to 20 pounds" (Dkt. 13, p. 15). Defendant responds that "according to the DOT, light work exertion involves '[e]xerting up to 20 pounds of force occasionally, and/*or* up to 10 pounds of force frequently" (Dkt. 16, p. 15 (citing U.S. Dep't of Labor, *Dictionary of Occupational Titles*, App. C (4th ed. 1991) ("DOT"), *available at* 1991 WL 688702). Defendant argues that because "this is an and/or distinction, neither the Cleaner-Polisher position nor the Router position necessarily require that plaintiff lift or carry 20 pounds so there is no inconsistency for the ALJ to resolve" (*id.*). This argument is persuasive.

Furthermore, defendant argues that even if there is any inconsistency, the VE cleared up any potential inconsistency during the hearing as "she 'qualif[ied] that those [we]re light titles [even though] [t]he hypothetical has a slightly lower lifting-carrying level than the typical definition of light'" (*id.* (citing AR. 68)). As noted by defendant, the VE "testified that she 'included those two light jobs because they are all performed at a bench. There are very minimal objects handled with the hands, and [she] believe[d] that

they are appropriate given the hypothetical without eroding the numbers based on the lift-carry restriction" (*id.* (quoting AR. 68)). Again, defendant's argument is persuasive. Having reviewed the VE's testimony from the hearing, the Court concludes that even if any inconsistency between the DOT and the VE's testimony exists, the VE resolved any inconsistency in her testimony at the hearing as she explained that the jobs identified do not require lifting or carrying more than ten pounds but instead require handling small objects (*see* AR. 68).

Plaintiff also contends that the ALJ erred by failing to resolve an additional alleged inconsistency between the DOT and the testimony by the VE in that "the DOT indicates that the jobs of Cleaner-Polisher and Assembler both require constant reaching, and the job of Router requires frequent reaching," while the ALJ limited plaintiff to only occasional reaching in the RFC (Dkt. 13, p. 15). However, the ALJ's RFC only limits plaintiff to work "that does not require more than occasional right overhead reaching" (AR. 15). The RFC does not contain any limitations on reaching on the left side, and, as noted, the only limitation on reaching on the right side is to overhead reaching (*see id.*).

Similar to the question presented in this matter, the Ninth Circuit was faced with the issue whether or not an ALJ erred in determining that a claimant could perform work requiring frequent reaching "despite her inability to reach above shoulder level with her right hand." *Gutierrez v. Colvin*, No. 14-35231, 2016 U.S. App. LEXIS 13824 at *2 (9th Cir. July 29, 2016) (unpublished opinion). The court noted that the DOT "provides only that a cashier must be able to 'reach[]' 'frequently,' but it does not specify the type or direction of the reaching." *Id*. The court found that although reaching "can require *up* to"

the extension of both arms in any direction, "the DOT itself leaves ample room for 'a VE

. . . . to provide more specific information about jobs or occupations than the DOT.'"

*Id.* at \*2-\*3 (citing SSR 00-4p, 2000 SSR LEXIS 8, \*6, 2000 WL 1898704, at \*2; SSR

85-15, 1985 SSR LEXIS 20, \*19, 1985 WL 56857, at \*7). The court concluded in that

particular situation, where "the ALJ's hypothetical specifically included [the claimant's]

limitation on overhead reaching, but indicated that [the claimant] could reach in all other

directions with her right arm, as well as no restrictions on [her] ability to reach with her

left arm," that "there was no 'apparent' conflict between the [DOT's] highly generic

description of cashier work and the vocational experts ('VE's') testimony." *Id.* Instead,

the court concluded "that a VE is entitled to rely on his professional knowledge and

common sense in determining that a hypothetical individual can perform work in a given

field notwithstanding a minor limitation on one type of 'reaching.'" *Id.* at \*3. The court

concluded specifically that although the DOT indicated that frequent reaching was

required for the cashier job, because "the DOT fails to specify that the ability to reach

*overhead with both hands* is required to perform cashier work, there was no apparent

conflict between the VE's conclusion that [the claimant] could perform cashier work and

the DOT's generic job description" indicating frequent reaching, despite the claimant's

inability to reach overhead with her right hand. *Id.* (emphasis added)

Such reasoning is sound. Here, as in the matter before the Ninth Circuit in

*Gutierrez,* the ALJ's RFC includes only a limitation to occasional overhead reaching on

the right side, thus indicating that there is no limitation on reaching in other directions on

the right side and no limitation to reaching on the left side. *Id.* (*see also* AR. 15).

Therefore, because the DOT does not specify that *overhead* reaching on the right side is required for the particular job positions, there is no apparent conflict requiring resolution. *See Gutierrez*, No. 14-35231, 2016 U.S. App. LEXIS 13824 at *2-*3 ("Because the DOT fails to specify that the ability to reach overhead with both hands is required to perform cashier work, there was no apparent conflict between the VE's conclusion that Gutierrez could perform cashier work and the DOT's generic job description").

Plaintiff also contends that the ALJ erred by finding that plaintiff's RFC allows him to work in the job of Router, which requires the ability to listen carefully to customer complaints and to serve clients and customers (*see* Dkt. 13, pp. 15-16). As noted by plaintiff, his RFC limits his exposure to the public in that it allows for jobs that do not require interaction with the general public and jobs that are performed where the general public typically is not present (*see* AR. 15). Defendant responds that even if the ALJ erred by listing Router as a job that plaintiff could perform, "any error is harmless because substantial evidence would still support the ALJ's finding that plaintiff can perform a significant number of jobs," noting that the VE testified that there are 87,827 Cleaner-Polisher jobs available nationally, and 1309 in Washington, as well as 28,040 Assembler jobs nationally, and 454 in Washington (Dkt. 16, p. 16 (citing AR. 23, 68)). Defendant's argument is persuasive.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in

*Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (citing *Stout,* 454 F.3d at 1055-56). Courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111) (codification of the harmless error rule)).

In this matter, the ALJ found that that there are three different positions that plaintiff can perform, based on the testimony of the VE (*see* AR. 23). Even if the Router position is eliminated, the two positions of Cleaner-Polisher and Assembler both remain as jobs that one with plaintiff's RFC can perform. Therefore, even if it was error for the ALJ to include the job of Router, the Court can conclude with confidence that no reasonable ALJ "could have reached a different disability determination," even when not relying on the job of Router, given the other two jobs that plaintiff can perform. *See Marsh*, 792 F.3d at 1173 (citing *Stout,* 454 F.3d at 1055-56).

Regarding job numbers, as noted by defendant, the VE testified that regarding the Cleaner-Polisher job, there are 87,827 jobs nationally available and 1,309 available in Washington; and that regarding the Assembler job, there are 28,040 jobs nationally available and 454 such jobs available in Washington (*see* AR. 68).

If the ALJ reaches the final step in the sequential analysis, the burden shifts to the Commissioner to prove that the claimant can perform other work in the national

economy, given his age, education, residual functional capacity ("RFC") and past work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also* 20 C.F.R. §§ 404.1520(g), 404.1594(f)(8), 416.994(b)(5)(vii); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). This other work "'which exists in the national economy' means work which exists in significant numbers *either in* the region where such individual lives *or in* several regions of the country." 42 U.S.C. § 423(d)(2)(A) (emphases added); *see also* 20 C.F.R. § 404.1560(c)(1). As indicated in the statute, the work identified that a claimant can perform means work which exists in significant numbers either in a specific region, or combined in several regions of the country. *See id.*; *see also Gutierrez*, 740 F.3d at 528 (citations omitted). The Ninth Circuit has concluded that 25,000 jobs nationally constitutes work which exists in significant numbers in several regions of the country, although this number was found to be a "close call." *See Gutierrez,* 740 F.3d at 528, 529 (citing 42 U.S.C. § 1382c(a)(3)(B) (other citations omitted)).

Here, the ALJ relied on a total of 115,867 jobs nationally, which is much greater than the 25,000 jobs nationally which was found to be a sufficient amount of work existing in significant numbers in several regions of the country by the Ninth Circuit. *See Gutierrez*, 740 F.3d 528, 529 (citing 42 U.S.C. § 1382c(a)(3)(B) (other citations omitted)).  Therefore, the Court concludes that the ALJ's error in counting the jobs available as a Router is harmless error is there are a sufficient number, over one hundred thousand, of Cleaner-Polisher and Assembler jobs available in the national economy to satisfy the burden to demonstrate a sufficient number of jobs available that plaintiff can perform. *See id.* at 528 ("25,000 jobs meets the statutory standard").

Finally, plaintiff argues that the ALJ's finding in the RFC that plaintiff only can perform work that does not require interaction with coworkers requires a finding that plaintiff is disabled as this finding precludes plaintiff from performing any jobs (*see* Dkt. 13, p. 16; *see also* Dkt. 17, p. 8). Plaintiff bases this argument on testimony from the VE, which indicates that incidental contact with coworkers is present in all jobs (*see id.* (citing AR. 69-70)).

Based on a review of the VE's testimony, Court concludes that this argument by plaintiff is not persuasive. When discussing the jobs that the VE testified that one with plaintiff's RFC could perform, she indicated that they all entail a "discrete work area allow[ing] the worker to complete their tasks without undue interaction from coworkers" (AR. 68). The VE further testified that "there are really no tandem tasks" and that the jobs were "solitary job[s]" (*id.*). Subsequently, when questioned by plaintiff's attorney, the VE testified that all jobs require "incidental contact or coming into work, going on a break -- those things" (AR. 69-70). The VE further explained:

> [The RFC and hypothetical] exclusion of contact with coworkers is that there is no required contact to perform the essential functions of the job. So a Cleaner-Polisher polishes small parts with hand -- either hand tools or rags, and that's all that's required of that job. They may have a conversation with a coworker next to them or they may not, but that's not a job requirement. It doesn't require that I communicate with another worker or that I partner with them in the performance of tasks.

(AR. 70). The VE further clarified her interpretation of (the RFC and) the hypothetical presented to her by the ALJ has one in which the "essential functions don't require interpersonal contact with coworkers" (AR. 71).

1    The ALJ's RFC for plaintiff indicates that plaintiff has the ability to perform work

2  that "does not require interaction with the general public or coworkers" (AR. 15). Based

3  on this, and based on the VE's testimony, the Court concludes that there is no

4  inconsistency between the VE's testimony and the DOT for the jobs that the VE testified

5  plaintiff could perform given his RFC. Plaintiff's RFC indicates that he can perform jobs

6  that do not require interaction with coworkers, and the jobs that the VE testified that one

7  with plaintiff's RFC could perform are jobs that likewise do not require interaction with

8  coworkers, although there may be incidental contact as workers arrive at work or pass by

9  each other as they go to take breaks. There is no inconsistency.

10

11    **(4)    Should this case be remanded for payment of benefits, rather than
         further administrative proceedings?**

12    Because the Court has concluded that the ALJ did not commit any harmful legal

13  error, there is no need to remand this case.

14                                   CONCLUSION

15    Based on these reasons and the relevant record, the Court **ORDERS** that this

16  matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

17    **JUDGMENT** should be for defendant and the case should be closed.

18    Dated this 6th day of December, 2016.

19

20

21                                   J. Richard Creatura
                                     United States Magistrate Judge
22

23

24